# EXHIBIT A

COOLEY LLP
Mark F. Lambert (197410)
mlambert@cooley.com
Lam K. Nguyen (265285)
lnguyen@cooley.com
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306-2155
Telephone: (650) 843-5000
Facsimile: (650) 849-7400

FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP
Stephen S. Rabinowitz
srabinowitz@friedfrank.com
Randy C. Eisensmith (*Pro Hac Vice*)
randy.eisensmith@friedfrank.com
Michael A. Kleinman (*Pro Hac Vice*)
michael.kleinman@friedfrank.com
One New York Plaza
New York, New York 10004-1980
Telephone: (212) 859-8000
Facsimile: (212) 859-4000

Attorneys for Defendant
ROCHE MOLECULAR SYSTEMS, INC.

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| CEPHEID, | Case No. 3:12-cv-04411-EMC |
| Plaintiff, | **DEFENDANT ROCHE MOLECULAR SYSTEMS, INC.'S RESPONSE TO PLAINTIFF'S CIVIL L. R. 7-3(d) SUBMISSION** |
| v. | |
| ROCHE MOLECULAR SYSTEMS, INC. and F. HOFFMANN-LA ROCHE LTD., | |
| Defendants. | |

1    Defendant Roche Molecular Systems, Inc. ("RMS") respectfully requests that, in the
2 event the Court considers the "posthearing statement" filed on December 28, 2012 by Plaintiff
3 Cepheid (D.I. 61-2), it also consider this brief response.

4    Cepheid mischaracterizes both the facts and the law in its effort to demonstrate a
5 justiciable controversy between the parties concerning U.S. Patent No. 6,127,155 (the "'155
6 patent"). As RMS demonstrated both in its briefing and at oral argument, the actual dispute
7 between the parties concerns a <u>separate and independent</u> patent: U.S. Patent No. 5,804,375 (the
8 "'375 patent").[1]

9    First, the November 9, 2010 letter from RMS to Cepheid did not "link[] the '155 patent to
10 the parties' dispute over the '375 patent," as Cepheid contends. Posthearing Statement at 1, lines
11 9-10. On the contrary, the first paragraph of that letter refers to RMS's assessment of "some
12 products of Cepheid and/or its affiliates" with respect to infringement of the '375 patent in view
13 of Cepheid's cancellation of the '375 patent from its existing license agreement. Rabinowitz
14 Decl., Exh. 12. The second paragraph states that in reviewing that license agreement, RMS
15 realized that it did not contain the '155 patent, which RMS then offered to license on
16 advantageous terms. *Id*. The letter makes no suggestion that products requiring a license under
17 the '375 patent necessarily required a license under the '155 patent — indeed, the terms of
18 Cepheid's license agreement demonstrate that RMS would license these patents separately.

19    Second, there is no basis whatsoever for Cepheid's contention that "Cepheid asked RMS
20 if it still contended that Cepheid required a license to the '155 patent" during the phone call
21 from Joseph Smith (Cepheid's General Counsel) to Monte Wetzel (RMS's Head of Licensing)
22 that prompted RMS to send a draft Term Sheet. Posthearing Statement at 1, lines 16-17. The
23 record is utterly devoid of any evidence to support that contention, which RMS denies and which
24 Cepheid puts forth – belatedly – in attorney argument unsupported by <u>any</u> citation to the record.

---

[1] Cepheid expressly admitted that the '375 and '155 patents are separate and independent when it argued: "Even if the Court grants RMS's motion to stay the counts relating to the '375 patent, the '155 patent is <u>entirely independent</u> and should go forward." Plaintiff's Opposition to Defendant Roche Molecular Systems, Inc.'s Motion to Stay Counts I and II Under the Federal Arbitration Act and Dismiss Counts III and IV Under Federal Rule of Civil Procedure 12(b)(1) ("Opp."), at 14, lines 2-5 (emphasis added).

Nor, third, is it true that by sending Cepheid a term sheet in response to Mr. Smith's call, RMS supposedly "confirmed it did [still contend that Cepheid required a license under the '155 patent]." *Id*. at 1, lines 17-18.  The email and appended term sheet that RMS sent to Cepheid are before the Court (*see* Rabinowitz Decl., Exh. 13) and their text belies Cepheid's self-serving characterization.  The email is devoid of any allegation of infringement or assertion that a license was required, and the term sheet simply set forth standard commercial terms under which Cepheid could choose to obtain a license under several patents, including the '155 patent, should it wish to do so.

In addition to misstating the facts, Cepheid's Posthearing Statement also mischaracterizes the law.  The existence of a dispute between the parties concerning the '375 patent does not entitle Cepheid to bring a declaratory judgment action concerning unrelated patents owned by RMS, such as the '155 patent.  This issue was carefully considered in *Applera Corp. v. Michigan Diagnostics, LLC*, 594 F. Supp. 2d 150 (D. Mass. 2009), which was cited at page 5 of RMS's Reply in support of the motion to stay and dismiss.  In that case, the plaintiff had sued the defendant for infringement of three patents and sought to amend its complaint in order to assert five additional patents.  594 F. Supp. 2d at 153-54.  The defendant counterclaimed for declaratory judgment of non-infringement as to sixty-two patents owned by the defendant: seven patents that were asserted in the action and fifty-five additional patents that were not asserted by the plaintiff.  *Id*. at 155.  The court dismissed the action with respect to the fifty-five unasserted patents for lack of a justiciable case or controversy.  *Id*.  The plaintiff had written to the defendant identifying the sixty-two patents on which the defendants sought declaratory judgment, *id*. at 159, but the court agreed with the plaintiff that this communication and the parties' subsequent discussions amounted to "[m]inor dialogue" that failed to create a "definite and concrete dispute" except as to the seven patents that were asserted by the plaintiff.  *Id*. at 160 (alteration in original; internal quotation marks and citations omitted).  As the court observed, the plaintiff "did not make any specific allegations of infringement except within its pleading in this lawsuit."  *Id*.  As for the the fifty-five unasserted patents, "it may be fairly said that [the

defendant] is essentially seeking an advisory opinion." *Id*. Accordingly, dismissal was warranted as to the unasserted patents. *Id*. ("There is no jurisdiction for that essay."). This is fully in accord with post-*MedImmune* Federal Circuit precedent. *See Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1341 (Fed. Cir. 2008) (noting that one prior litigation between the parties "premised on other patents cannot alone create a real and immediate controversy, and it is entitled to only minimal weight in analyzing whether such a controversy has been created") (affirming dismissal of action for declaratory judgment).

The cases relied on by Cepheid are inapposite. In *Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358 (Fed. Cir. 2009), the court noted there was <u>not</u> a "history of litigation by [the patent owner] regarding the [patent in suit]" and concluded that the absence of this factor was not dispositive even though it recognized in dictum that "[a] history, or the lack thereof, of litigating in the industry can certainly be a factor to be considered." *Id*. at 1364 n.1 (citing *Prasco*, 537 F.3d at 1341).

In *Plumtree Software, Inc. v. Datamize, LLC*, 473 F.3d 1152 (Fed. Cir. 2006), the patent owner had sued the declaratory plaintiff for infringement of "the parent '137 patent," *id*. at 1159, and had stated in response to an interrogatory in another litigation that it believed the declaratory plaintiff "was infringing these [descendent] patents," *id*. at 1160, which were "similar to the '137 patent." *Id*. at 1157. None of these facts are present here. The '155 patent is not a parent or a descendent of the '375 patent, with which it shares no common ancestor. These patents are not "similar" but are drawn to separate and independent inventions, as Cepheid has admitted in this litigation. Opp. at 14, lines 2-5. And, unlike in *Plumtree*, RMS had never accused Cepheid of infringing the '155 patent.

Finally, in *Vanguard Research, Inc. v. PEAT, Inc.*, 304 F.3d 1249 (Fed. Cir. 2002), the patent owner had sued the declaratory plaintiff for misappropriation of trade secrets "regarding the same technology" that was covered by the patent that was the subject of the declaratory judgment action, and had moreover "inform[ed] [the declaratory plaintiff's] clients that [the declaratory plaintiff] is using [the patent owner's] technology without a license." *Id*. at 1255.

No such facts are present here. There is no history of litigation regarding the technology of the '155 patent, nor of any accusatory statements to Cepheid's customers about this techology.

**CONCLUSION**

For the reasons stated above, the parties' acknowledged dispute regarding the '375 patent does not help create a justiciable controversy between them concerning the '155 patent, which is directed to a separate and independent invention.

Dated: January 4, 2013                    FRIED, FRANK, HARRIS, SHRIVER
                                                                              & JACOBSON LLP


                                               _/s/ Stephen S. Rabinowitz_
                                               Stephen S. Rabinowitz
                                               Attorneys for Defendant
                                               ROCHE MOLECULAR SYSTEMS, INC.