PAGES 1-34

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE EDWARD M. CHEN, JUDGE

CEPHEID,                                )
                                        )
              PLAINTIFF,                )
                                        )
  VS.                                   ) NO. C12-4411 EMC
                                        )
ROCHE MOLECULAR SYSTEMS, INC. AND       )
F. HOFFMANN-LA ROCHE LTD.,              )
                                        )  SAN FRANCISCO, CALIFORNIA
                                        )  FRIDAY
              DEFENDANTS.               )  DECEMBER 21, 2012
                                        )  1:30 O'CLOCK P.M.
_____)

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

**FOR PLAINTIFF:**

**FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP**
STANFORD RESEARCH PARK
3300 HILLVIEW AVENUE
PALO ALTO, CALIFORNIA 94304-1203
650-849-6666
**BY:  ERIK R. PUKNYS, ESQUIRE**
**TINA E. HULSE, M.D., ATTORNEY AT LAW**

**M. PAUL BARKER, ESQUIRE**

REPORTED BY:      KATHERINE WYATT, CSR 9866, RMR, RPR
                *OFFICIAL REPORTER - US DISTRICT COURT*
                *COMPUTERIZED TRANSCRIPTION BY ECLIPSE*

FURTHER APPEARANCES ON NEXT PAGE

KATHERINE WYATT, OFFICIAL REPORTER, RPR, RMR  925-212-5224

**ALSO FOR PLAINTIFF:**
**MORRISON & FOERSTER**
425 MARKET STREET
SAN FRANCISCO, CALIFORNIA 94105-2482
268-7522
**BY:  CEDRIC C. CHAO, ESQUIRE**


**FOR DEFENDANTS:**

**FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP**
ONE NEW YORK PLAZA
NEW YORK, NEW YORK 10004-1980
1-212-859-4000
**BY:  STEPHEN S. RABINOWITZ, ESQUIRE**

AND


**COOLEY LLP**
3175 HANOVER STREET
PALO ALTO, CALIFORNIA 94304-1130
**BY:  MARK LAMBERT, ESQUIRE**

KATHERINE WYATT, OFFICIAL REPORTER, RPR, RMR  925-212-5224

DECEMBER 21 2012                            1:30 O'CLOCK  P.M.


                        P R O C E E D I N G S

          THE CLERK:  CALLING CASE C12-4411, CEPHEID VERSUS

ROCHE.

     COUNSEL, PLEASE COME FORWARD TO THE PODIUM, AND STATE YOUR

NAME FOR THE RECORD.

          THE COURT:  ARE WE HAVING A CLAIM CONSTRUCTION

HEARING OR SOMETHING?

          MR. CHAO:  I HOPE NOT.

          THE COURT:  DID I GET THE WRONG THING ON CALENDAR?

          MR. RABINOWITZ:  YOUR HONOR, HOPEFULLY NEVER.

          THE COURT:  SO CAN YOU MAKE YOUR APPEARANCES?  I'D

APPRECIATE IT.

          MR. PUKNYS:  ERIK PUKNYS REPRESENTING PLAINTIFF

CEPHEID.

          THE COURT:  ALL RIGHT. THANK YOU.

          MR. RABINOWITZ:  STEPHEN RABINOWITZ REPRESENTING

DEFENDANT ROCHE MOLECULAR SYSTEMS.  I'M ACCOMPANIED HERE BY

MARK LAMBERT.

          THE COURT:  GOOD AFTERNOON, EVERYONE.

     SO THE FIRST QUESTION, I DON'T THINK THERE'S A HUGE

DISAGREEMENT, GOES TO THE QUESTION OF STAY AS TO COUNT ONE AND

TWO.

     AND GIVE THAT, YOU KNOW, THERE'S AN ARBITRATION ONGOING,

IT SEEMS TO ME THAT THE ONLY ISSUE IS -- DIFFERENCE IS WHETHER THERE SHOULD BE AN AUTOMATIC EXPIRATION OF THE STAY UPON THE ISSUANCE OF A JURISDICTIONAL DECISION, THE ARBITRABLE TRIBUNAL, OR WHETHER THE STAY STAYS IN PLACE UNTIL SORT OF FURTHER ORDER OR WE HAVE SOME AFFIRMATIVE ACTION HERE TO COME TO ME AND BRING IT TO MY ATTENTION.

AND I AM NOT SURE WHY THE LATTER WOULDN'T BE THE CASE BECAUSE I THINK RATHER THAN SOMETHING AUTOMATICALLY HAPPENING, IF THERE'S SOME OTHER ISSUE OR SOME NUANCE, WHY NOT HAVE THIS COURT LOOK AT IT?

**MR. RABINOWITZ:**  YOUR HONOR, THAT IS THE DEFENDANT'S POSITION. FIRSTLY, THE STATUTE REQUIRES THAT THE STAY BE -- IT SAYS:

"THE COURT SHALL, UPON APPLICATION OF ONE OF THE PARTIES, STAY THE TRIAL OF THE ACTION UNTIL SUCH ARBITRATION HAS BEEN HAD."

IT'S BOTH MANDATORY AND IN THE PAST TENSE. SO A STAY THAT AUTOMATICALLY EXPIRES BEFORE THE ARBITRATION HAS CONCLUDED WOULD NOT BE IN CONFORMITY WITH THE STATUTE.

AND, SECONDLY, IT REALLY DOESN'T MAKE SENSE.  IF THE TRIBUNAL DECIDES THAT IT HAS JURISDICTION AND IS GOING TO PROCEED TO THE MERITS, THEN IF THE STAY EXPIRES OF ITS OWN FORCE THE INSTANT THE TRIBUNAL MAKES THAT RULING WE WILL HAVE TO COME HERE AND DO THIS ALL OVER AGAIN BECAUSE THERE WILL BE NO STAY IN PLACE.

AND WE DON'T THINK IT'S EFFICIENT.  WE DON'T THINK IT'S EFFICIENT FOR THE PARTIES OR THE COURT, AND WE DON'T THINK IT'S IN CONFORMITY WITH THE STATUTE.

**MR. PUKNYS:**  I DON'T THINK WE DISAGREE. I THINK THAT THE STAY CAN BE PUT IN PLACE. AND AS SOON AS WE SEE THE SCOPE OF THE ARBITRATION, WE CAN COME BACK TO YOUR HONOR AND DECIDE WHETHER THIS CASE GOES FORWARDS OR NOT.

**THE COURT:**  ALL RIGHT.  SO WE DON'T HAVE A DISAGREEMENT.

**MR. PUKNYS:**  I DON'T THINK WE DO.

**THE COURT:**  STAY UNTIL FURTHER ORDER?  AND I'M SURE IT WILL BE BROUGHT TO MY ATTENTION BY ONE OF THE PARTIES AS SOON AS THEY DEEM IT APPROPRIATE.

**MR. RABINOWITZ:**  YES, SIR.

**THE COURT:**  SO WE'LL GO AHEAD AND ISSUE THE STAY.

SO THE MORE CHALLENGING QUESTION, I GUESS, HAS TO DO WITH JURISDICTION AND STANDING OR RIPENESS, HOWEVER YOU WANT TO PUT IT, WITH RESPECT TO THE '155. AND THIS IS SOMEWHAT ODD GIVEN THE PROCEDURAL POSTURE.

EVERYTHING IS ALREADY IN A DECLARATORY RELIEF ACTION. EVERYTHING IS ALREADY BACKWARDS TO START WITH.  BUT NOW WE HAVE THE PARTY POTENTIALLY ACCUSED SAYING:

"I'VE BEEN ACCUSED ENOUGH THAT I NEED DECLARATORY RELIEF."

AND THE PARTY THAT -- THE ACCUSER IS SAYING:

"WELL, WE HAVEN'T ACCUSED YOU ENOUGH TO CREATE THE CASE OR CONTROVERSY."

IF YOU GET OUT OF THE WEEDS OF SERIES OF FEDERAL CIRCUIT CASES AND THE DOCTRINE OF STANDING AND ALL THAT, I JUST SIT BACK AND ASK:

"WHAT IS GOING ON HERE?"

I MEAN, ARE YOU INTERESTED IN ENFORCING -- WHAT IS THE POSITION?

**MR. PUKNYS:**  WELL --

**THE COURT:**  ARE YOU GOING TO ENFORCE -- IS THERE AN INFRINGEMENT OR NOT?  I MEAN, IF THERE ISN'T, IF YOU THINK IT'S MOOT AND YOU'RE NOT SERIOUS ABOUT ENFORCING IT, LET'S GET THAT OUT OF THE WAY NOW.  AND YOU CAN NEGOTIATE A RESOLUTION OR ISSUE A COVENANT NOT TO SUE OR DO SOMETHING.  OR IF YOU THINK THERE IS, LET'S GO DO IT.

**MR. PUKNYS:**  WELL, THAT IS IN MR. RABINOWITZ' POWER TO SAY UNEQUIVOCALLY THAT ROCHE DOES NOT THINK CEPHEID INFRINGES THE '155 PATENT AND ISN'T GOING TO SEEK RELIEF PAST, PRESENT OR FUTURE, WE CAN ALL GO HOME.

THE PROBLEM IS IN THAT CEPHEID FINDS ITSELF IN EXACTLY THE SITUATION ALL DJ PLAINTIFFS FINDS THEMSELVES IN, WHICH IS YOU HAVE A PATENT OWNER WHO FOR VERY GOOD REASON DOESN'T WANT TO TEST THE VALIDITY OF ITS PATENT IN LITIGATION, BUT STILL WANTS TO GET SOME BENEFIT OUT OF THE PATENT. SO IT HOLDS IT UP IN LICENSING NEGOTIATIONS, ACCUSES OTHERS, AND IN THIS CASE,

CEPHEID OF INFRINGING THE PATENT.

BUT THEN, WHEN IT COMES TIME TO ACTUALLY TEST THE PATENT THEY REFUSE TO GO FORWARD.  AND THAT'S EXACTLY WHY THE DECLARATORY JUDGMENT ACTION WAS PUT INTO PLACE.

NOW, I UNDERSTAND THAT YOUR HONOR MAY BE PUZZLED WHY CEPHEID WANTS TO KICK OVER THE HORNET'S NEST, AS IT WERE.

**THE COURT:**  YOU WANT CLARITY.

**MR. PUKNYS:**  WE WANT CLARITY.  THAT'S EXACTLY RIGHT. WE WANT ROCHE TO STOP PUTTING THESE BARRIERS --

**THE COURT:**  SO I SORT OF UNDERSTAND THAT.

**MR. PUKNYS:**  YES.

**THE COURT:**  I GUESS MY QUESTION TO ROCHE IS:  LET'S FISH OR CUT BAIT.

WHAT IS IT?  WHAT IS THE POSITION?

**MR. RABINOWITZ:**  YOUR HONOR, COUNSEL HAS JUST DESCRIBED THE SITUATION TO WHICH THE DECLARATORY JUDGMENT ACT IS ADDRESSED WHEN AN ACCUSATION OF INFRINGEMENT HAS BEEN MADE. AND THIS IS WHAT WE ARGUED ABOUT IN THE CASES CITED IN OUR BRIEF.

THE ISSUE HERE IS WHERE AN ACCUSATION OF INFRINGEMENT HAS NOT BEEN MADE. DOES SOMEONE WHO IS ADVERSELY DISPOSED TO THE PATENT OR HAS SOME OTHER AXE TO GRIND AGAINST THE PATENT OWNER AS SURELY CEPHEID HAS HERE, THERE'S A REAL WHITE HOT DISPUTE BETWEEN THE PARTIES ON THE '375 PATENT.

THIS IS BEING DONE AS A SIDE SHOW FOR TACTICAL REASONS BY

THREATENING TO BRING DOWN ROCHE'S '155 PATENT, WHICH THE WORLD IS RESPECTING, CEPHEID GETS TO PUT PRESSURE ON ROCHE.  AND THAT FACTORS INTO THE NEGOTIATIONS.

**THE COURT:**  BUT IF YOU DON'T FEEL THAT IT'S SOMETHING THAT ROCHE IS GOING TO ENFORCE, WHY NOT JUST GIVE A COVENANT NOT TO SUE AND PUT THIS TO BED AND YOU CAN CONCENTRATE ON THE OTHER PATENT?

**MR. RABINOWITZ:**  YOUR HONOR, WE DON'T KNOW ALL THEY DO.  AND ROCHE IS NOT IN A POSITION TO TAKE --

**THE COURT:**  WELL, YOU KNEW ENOUGH FOR YOUR CLIENT TO WRITE A LETTER ON NOVEMBER 9TH, 2010, TO SAY:

"IN THE COURSE OF OUR REVIEW IT HAS COME TO OUR ATTENTION THAT THE ABOVE-REFERENCED LICENSE AGREEMENT DOES NOT CONTAIN THE '155 AS A LICENSED PATENT WHICH, QUOTE, 'WE BELIEVE IS NECESSARY FOR CERTAIN OF YOUR PRODUCTS.'"

SO I WOULDN'T SAY YOU DON'T KNOW ANYTHING. YOU KNOW SOMETHING, OBVIOUSLY.

**MR. RABINOWITZ:**  AND, YOUR HONOR, THE CENTRAL ISSUE FOR WHETHER ARTICLE III JURISDICTION EXISTS IS WHETHER THAT LETTER GOES FAR ENOUGH UNDER THE --

**THE COURT:**  NO, I UNDERSTAND THE LAW. I'M TRYING TO FIGURE OUT WHY CAN'T WE CUT THROUGH THIS STUFF AND YOU JUST DECIDE -- YOUR CLIENT DECIDES YOU ARE GOING TO GO WITH IT OR NOT.

YOU KNOW ENOUGH ABOUT THE PRODUCT TO IDENTIFY IT IN THE

LETTER.  YOU OBVIOUSLY UNDERSTAND YOUR PATENT.  YOU WOULDN'T BE HERE IF YOU DIDN'T. AND YOU KNOW SOMETHING ABOUT THEIR PRODUCT. SO WHY DON'T YOU JUST FIGURE IT OUT?  ARE YOU GOING TO GO FOR IT OR NOT?

**MR. RABINOWITZ:**  THE REASON THAT THAT IS PHRASED IN SUCH TENTATIVE TERMS IN THAT LETTER, IT IS NOT A FIRM POSITION. IT'S A BELIEF AND IT'S MORE AN EXHORTATION TO CONSIDER TAKING A LICENSE THAT IS BEING OFFERED ON VERY FAVORABLE TERMS.

THIS IS NOT A LITIGATION POSITION.  IF WE WERE TO GO FORWARD WITH LITIGATION, ROCHE WOULD HAVE THE OBLIGATION UNDER THIS COURT'S LOCAL PATENT RULES TO ADOPT FIRM, BINDING POSITIONS ON EACH AND EVERY PRODUCT THAT MAY INFRINGE THE PATENT ON PAIN OF BEING OUSTED OUT OF THE CAUSE OF ACTION IF IT TURNED OUT TO HAVE MISSED SOMETHING.

THAT IS A HUGE BURDEN. NOT ONLY THAT, BUT THEN ALSO TO DEFEND BOTH THE VALIDITY AND THE TERM AND THE ENFORCEABILITY OF THE PATENT. AND IT IS TO PREVENT THE TACTICAL USE OF DECLARATORY JUDGMENT SUITS THAT THE STATUTE REQUIRES NOT ONLY A CONSTITUTIONAL CASE OR CONTROVERSY OF SUFFICIENT REALITY AND IMMEDIACY TO REQUIRE AND JUSTIFY THE EXERCISE OF DECLARATORY JURISDICTION.  BUT ALSO WHERE IT IS BEING USED FOR TACTICAL PURPOSES THAT DON'T COMPORT WITH THE AIMS OF THE DECLARATORY JUDGMENT ACT, THE COURT HAS UNIQUELY BROAD DISCRETION NOT TO ENTERTAIN SUCH A SUIT.

**THE COURT:**  ALL RIGHT.  SO THIS LETTER WAS, IN YOUR

VIEW, VERY TENTATIVE.  IT WAS NOT DEFINITIVE.  IT WASN'T A CLEAR ASSERTION.  YOU HADN'T REACHED A FIRM CONCLUSION.  AND YOUR CLIENT IS NOT PREPARED OR PREFER NOT TO INVEST IN A LAWSUIT AT THIS POINT BECAUSE THEIR POSITION IS NOT FIRMLY ENTRENCHED.

MR. RABINOWITZ:  IT HAS TAKEN NO FIRM POSITION. IT HAS MADE NO ACCUSATIONS OF INFRINGEMENT. IT HAS IDENTIFIED NOT A SINGLE CLAIM SAID TO BE INFRINGED OR A SINGLE PRODUCT SAID TO BE INFRINGING AND HAS MADE NO THREATS OF ENFORCEMENT.

AND THE CONTEXT, THE CONTEXT OF THIS COMMUNICATION AND THE DELAY BEFORE CEPHEID COMMENCED THIS ACTION AND THE EVENTS THAT WERE GOING ON ALL THE WHILE, I THINK, DETRACT VERY GREATLY UNDER THE CASES WE'VE CITED.

THE EDMUNDS HOLDING COMPANY VERSUS AUTOBYTEL WHERE JUDGE ROBINSON IN DELAWARE FOUND THAT THE EFFECT OF DELAY WAS REAL WORLD EVIDENCE THAT THERE WASN'T AN IMMEDIATE CONTROVERSY THAT REQUIRED THE COURT TO INTERVENE IN THE DECLARATORY JUDGMENT ACTION.

THE COURT:  ON THE OTHER HAND, THERE ARE CASES THAT SAY THE PASSAGE OF TIME IS NOT DISPOSITIVE.  THERE HAVE BEEN CASES THAT --

MR. RABINOWITZ:  I WOULD LIKE TO ADDRESS THAT, YOUR HONOR.  IN MYRIAD, WHAT WAS GOING ON WAS VERY DIFFERENT. MYRIAD WAS A CASE WHERE THERE WAS ONLY ONE PLAINTIFF THAT THE COURT OF APPEALS FOUND HAD JURISDICTION.  DR. OSTRER, WHO WAS A

RESEARCHER AT NYU, I BELIEVE, AND HE HAD RECEIVED ACTUAL, EXPRESS, EXPLICIT THREATS FROM THE PATENT HOLDER, MYRIAD, WHICH COMMANDED AND CAUSED HIM, HE COMPLIED, TO STOP OFFERING THE BRCA TESTING HE WAS OFFERING; TO STOP SENDING MATERIALS TO HIS PREFERRED VENDOR, WHO WAS NOT LICENSED, FOR TESTING; TO SEND IT INSTEAD TO A LICENSEE OF THE PATENT OWNER. AND THAT WAS REAL ACTUAL INJURY.

AND WHAT THE COURT OF APPEALS SAID IS THE MERE PASSAGE OF TIME WHERE THE POSITIONS HADN'T CHANGED DIDN'T MITIGATE THAT INJURY OR MAKE IT GO AWAY. THAT'S DIFFERENT.

WE'RE NOT SAYING THAT THERE WAS AN IMMEDIATE DISPUTE IN 2010 CAPABLE OF DECLARATORY JUDGMENT RESOLUTION, WHICH HAS DISSIPATED.

WE'RE SAYING THAT UNDER THESE CIRCUMSTANCES, AND THE COURT OF APPEALS AND THE SUPREME COURT HAVE EMPHASIZED THIS IS A TOTALITY OF THE CIRCUMSTANCES TEST. THERE'S NO BRIGHT LINE HERE. UNDER THESE CIRCUMSTANCES THE FACT THAT CEPHEID DID NOTHING UNTIL PROMPTED BY EXTRANEOUS EVENTS IS EVIDENCE THAT IT WASN'T A SUBSTANTIAL AND IMMEDIATE CONTROVERSY WHICH REQUIRED RESOLUTION IN A DECLARATORY JUDGMENT ACTION.

AND, YOUR HONOR, IF I COULD JUST PUT UP A TIME LINE TO SHOW YOU WHERE THESE COMMUNICATIONS FIT IN THE SCHEME OF THINGS, BECAUSE I THINK IT'S VERY IMPORTANT, AS THE FEDERAL CIRCUIT SAID IN PRASCO, AND THE SUPREME COURT HAS NOTED --

**THE COURT:**  ALL RIGHT.

**MR. RABINOWITZ:**  -- UNDER THE TOTALITY OF THE CIRCUMSTANCES THAT IT MUST BE JUDGED.

YOUR HONOR, I HAVE COPIES FOR -- HARD COPIES FOR YOUR HONOR, IF I MAY HAND IT IN FOR YOUR HONOR'S LAW CLERK AND FOR COUNSEL, AS WELL.

SO, YOUR HONOR, CEPHEID IS RELYING ON FOUR COMMUNICATIONS SPANNING THE FIVE YEARS, APPROXIMATELY FIVE YEARS LEADING UP TO THE COMMENCEMENT OF THE DECLARATORY JUDGMENT ACTION.

AND THE FIRST ONE IS THE SEPTEMBER 2007 E-MAIL.  WE THINK THAT NOT VERY MUCH NEED BE SAID ABOUT THAT. THE E-MAIL, AND WE'VE PROVIDED A COPY OF THE E-MAIL IN THE BOOKLET I'VE JUST HANDED UP.

IT WAS AN E-MAIL WHICH SENT A LIST OF, I THINK, 112 PATENTS AND SAID NO MORE THAN CEPHEID WAS FREE TO INDICATE WHICH ONES IT WANTED TO LICENSE, AND ROCHE WOULD TELL THEM THE COST. IT WASN'T AN ACCUSATION. IT DIDN'T FOCUS ON THE '155 PATENT. IT DIDN'T IDENTIFY INFRINGING PRODUCTS OR INFRINGED CLAIMS, AND DIDN'T THREAT ANYTHING.

AND THEN, TIME PASSES, AND THEN WE COME TO THE SECOND COMMUNICATION ON WHICH CEPHEID IS RELYING HERE IS THE MAY 19TH, 2010 LETTER TO ALL LICENSEES. IT WAS ADDRESSED TO: "DEAR LICENSEE."

THESE WERE LICENSEES UNDER THE PCR PORTFOLIO.  AND WHAT ROCHE MOLECULAR SAID WAS THAT TWO OF THE U.S. PATENTS WERE ABOUT TO EXPIRE. THEY PROVIDED THE DATE OF EXPIRATION.

THE TWO CORRESPONDING OVERSEAS PATENT FAMILIES WERE GOING TO EXPIRE A YEAR LATER. THEY PROVIDED THAT INFORMATION. AND THEN, THEY SAY:

"TO CORRECTLY CALCULATE THE ROYALTY OBLIGATIONS" -- THIS IS IN THE SECOND PARAGRAPH OF THE LETTER -- "IT'S IMPORTANT TO IDENTIFY WHICH PATENTS APPLY TO YOUR LICENSED PRODUCTS AND WHEN THE RELATED PATENTS EXPIRE."

AND THEN, THEY LIST A NUMBER OF PATENTS. THIS IS NOT TARGETED AT CEPHEID WHATSOEVER. IT AGAIN MAKES NO ACCUSATIONS, NO THREATS. IT'S SIMPLY INFORMATION TO HELP THE LICENSEES UNDER THE PORTFOLIO CALCULATE THEIR OBLIGATIONS.

AND I KNOW THAT IN THEIR OPPOSITION BRIEF CEPHEID POINTED OUT IN THE LAST PARAGRAPH THAT ROCHE SAYS IT WILL CONTINUE TO CONDUCT RANDOM AUDITS.  THAT HAS NOTHING TO DO WITH THE '155 PATENT AS FAR AS CEPHEID IS CONCERNED BECAUSE CEPHEID NEVER LICENSED THE '155 PATENT AND ROCHE HAD NO AUDIT RIGHTS WITH RESPECT TO THE '155 PATENT TO EXERCISE AS TO CEPHEID.

TO OTHER LICENSEES WHO DID HAVE A LICENSE UNDER THE '155 PATENT, THE AUDIT WOULD HAVE COVERED THAT.  BUT THIS, I THINK, HAS NOTHING TO DO WITH THE '155 PATENT SO FAR AS CEPHEID IS CONCERNED.

AND THEN, THE THIRD COMMUNICATION IS THE NOVEMBER 9TH, 2010 LETTER.  AND IF YOU LOOK AT THE SURROUNDING EVENTS, NOT ONLY IS IT TENTATIVE, IS IT DEVOID OF ANY THREATS OR OF IDENTIFICATION OF INFRINGED CLAIMS OR INFRINGING PRODUCTS,

WHICH THE CASES WE'VE CITED, THE WOOSTER BRUSH CASE AND OTHERS HAVE TAKEN INTO ACCOUNT AS A FACTOR SHOWING THAT THERE IS NO ARTICLE III JURISDICTION.

BUT THERE'S THIS RAGING CONTROVERSY ABOUT THE '375 PATENT GOING ON.

CEPHEID IN JULY OF 2010 SENDS A LETTER TERMINATING ITS LICENSE UNDER THE '375 PATENT.  ROCHE COMMENCES IN AUGUST OF 2011 AN ARBITRATION IN SWITZERLAND WHICH IS THE CAUSE OF THE STAY THAT BOTH PARTIES AGREE SHOULD BE ENTERED NOW ABOUT THE '375 PATENT.

CEPHEID CHALLENGES ARBITRABLE JURISDICTION, AND THE ICC COURT GIVES AN ADVERSE RULING IN DECEMBER OF 2011 AND SAYS THE TRIBUNAL WILL DECIDE ITS OWN JURISDICTION.

AND THEN, IN APRIL OF 2012, THE TRIBUNAL MAKES IT CLEAR THAT IT IS GOING AHEAD.  IT CIRCULATES DRAFT TERMS OF REFERENCE AND PROCEDURAL ORDERS AND ACTUALLY A DRAFT TIMETABLE, AS WELL.

**THE COURT:**  ALL RIGHT.  BUT AS OF NOVEMBER 9TH THAT PREDATES ALL THE STUFF IN 2011.

**MR. RABINOWITZ:**  SO WHAT WE HAVE WHEN ROCHE SENT THE LETTER ON NOVEMBER 9TH, CEPHEID'S RESPONSE WAS PRECISELY NOTHING UNTIL IT BEGAN GETTING ADVERSE RULINGS IN THE ARBITRATION IN SWITZERLAND.

AND AFTER GETTING THE -- AFTER SEEING THAT THE TRIBUNAL WAS GOING AHEAD IN APRIL, ON APRIL 4TH, THE WEEK OF APRIL 16 TO 20TH, THEN CEPHEID RESPONDED BY MAKING A TELEPHONE CALL TO

ROCHE, AND IT ELICITED THE TERM SHEETS WHICH WAS SENT OUT WITH THE E-MAIL OF APRIL 24TH.  AGAIN, NO THREATS.  IT WAS A TERM SHEET IN RESPONSE TO CEPHEID'S CALL, THE GENERAL COUNSEL OF CEPHEID, PROVIDING LICENSE TERMS FOR A NUMBER OF PATENTS WHICH INCLUDED THE '155 PATENT. AND --

THE COURT:  SO WHAT'S YOUR CONSTRUCT?  WHAT'S YOUR INTERPRETATION OF THE SMITH CALL?  WHY?

MR. RABINOWITZ:  WE THINK THAT THE FACTS SUPPORT AN INFERENCE THAT CEPHEID WANTED TO STIR UP A CONTROVERSY; WAS HOPING TO GET A LETTER THAT THEY COULD USE IN SUPPORT OF ESTABLISHING DECLARATORY JUDGMENT JURISDICTION SO THAT THEY COULD GET INTO COURT, INTO THIS FORUM.  THAT THEY MADE NO BONES ABOUT THE FACT THAT THEY SOUGHT A JUDICIAL RATHER THAN AN ARBITRABLE FORUM FOR THEIR DISPUTE WITH ROCHE ON THE '375 PATENT.

AND THIS IS EITHER SOME EVIDENCE THAT MIGHT PERSUADE A COURT TO TREAT THE TWO DISPUTES AS RELATED AND KIND OF AMALGAMATE THEM, WHICH, YOU KNOW, I THINK IS UNSUPPORTABLE. OR, IF NOT, WOULD CREATE LEVERAGE AND BARGAINING POWER IN SETTLEMENT NEGOTIATIONS.

WE THINK THIS IS A TACTICAL MEASURE THAT CEPHEID WAS INDUCED TO BRING AS A RESULT OF THE ACTUAL CONTROVERSY WITH THE '375 PATENT.

WE THINK THAT THE --

THE COURT:  SO THIS WAS INDUCED AT THE RISK OF

STIRRING UP A HORNET'S NEST AND PUTTING THIS INTO PLAY WHEN THERE DIDN'T SEEM TO BE MUCH ENFORCEMENT INTEREST ON THE PART OF ROCHE PRIOR TO THAT FOR A YEAR-AND-A-HALF. A TACTICAL DECISION TO RISK GOING DOWN THAT ROAD IN ORDER TO OBTAIN SOME KIND OF TACTICAL ADVANTAGE BY CREATING SOME KIND OF ANCHOR IN THIS COURT BY PUTTING IN PLAY THE '155, AND THEREBY HOPING TO DRAW IN THE '375 AND TAKING IT OUT OF THE ARBITRABLE FORUM?

**MR. RABINOWITZ:**  PERHAPS THE HOPE OF DOING THAT, CERTAINLY THE EXPECTATION OF BEING ABLE TO OBTAIN SOME LEVERAGE.

AND THEN, IN ADDITION, WHICH CEPHEID REVEALED IN ITS OPPOSITION BRIEF, THE FEAR THAT ROCHE MIGHT AVAIL ITSELF OF STATUTORY RIGHTS CALLED "SUPPLEMENTAL EXAMINATION" THAT WOULD BECOME AVAILABLE UNDER THE AMERICAN INVENTS ACT, THE MONTH AFTER THEY BROUGHT SUIT.

IF THEY DIDN'T BRING -- AND THEY HAVE SAID THIS QUITE -- WE DIDN'T COTTON ONTO THIS UNTIL THEY MENTIONED IT IN THEIR OPPOSITION BRIEF.

IF THEY HAD NOT BROUGHT SUIT BY SEPTEMBER OF 2012, THEY FEARED ROCHE COULD INVOKE A NEWLY AVAILABLE PROCEDURE IN THE PATENT OFFICE CALLED "SUPPLEMENTAL EXAMINATION," WHICH THEY FEARED ROCHE MIGHT USE, AS THEY SAID, TO WHITEWASH, IN OTHER WORDS, TO ELIMINATE ANY ALLEGATION OF INEQUITABLE CONDUCT, WHICH FEATURES VERY PROMINENTLY IN THEIR COMPLAINT.  FIRST AMENDED COMPLAINT IS THE BULK, THE OVERWHELMING BULK OF THE

PAGES ARE DEVOTED TO THAT THEORY.

AND THAT, WE THINK, ALSO TOGETHER WITH THE DESIRE TO OBTAIN SOME TACTICAL ADVANTAGE, WE THINK PROMPTED THIS SUIT. IN FACT, WE DO NOT THINK IT WAS PROMPTED BY ANYTHING THAT ROCHE MOLECULAR DID.

WE THINK IN THE END IT APPEARS THAT IT WAS PROMPTED BY SOMETHING THAT CONGRESS DID.

**THE COURT:**  ALL RIGHT.  I'D LIKE TO HEAR YOUR RESPONSE AS TO WHY --

**MR. PUKNYS:**  SURE.

**THE COURT:**  WHAT'S YOUR INTERPRETATION OF WHY THE CALL FROM JOSEPH SMITH IN APRIL, 2012, AFTER SOME 18 MONTHS OF SILENCE?

**MR. PUKNYS:**  WELL, IT WAS CLEAR THAT THE DISPUTE BETWEEN ROCHE AND CEPHEID WAS COMING TO A HEAD. AND SO CEPHEID WANTED TO KNOW WHETHER ROCHE STILL THOUGHT THAT THE '155 PATENT WAS INFRINGED BY CEPHEID'S PRODUCTS. AND THE ANSWER IT GOT CONFIRMED ITS SUSPICION THAT ROCHE STILL DID THINK THAT CEPHEID'S PRODUCTS INFRINGED THE PATENT BECAUSE THE ANSWER WASN'T:

"NO, FORGET ABOUT WHAT WE SAID IN NOVEMBER, 2010."

IT WAS:

"HERE'S A TERM SHEET."

AND, AGAIN, THAT JUST IMPLIES THE NEED FOR A LICENSE ON BEHALF OF ROCHE. IT WAS NOT TRIGGERED BY THIS DECISION AT THE

ICC. THAT DECISION WAS TOTALLY EXPECTED, BECAUSE THE STANDARD FOR WHATEVER THE TRIBUNAL IS GOING TO DECIDE JURISDICTION IS SO LOW IT'S BASICALLY:

"UNLESS THERE'S OBVIOUS FRAUD IN THE CONTRACT, THEN WE'RE GOING TO REFER THE JURISDICTIONAL ISSUE TO THE TRIBUNAL."

AND, FRANKLY, I HAD NO IDEA THAT DECISION HAD BEEN MADE. IT JUST WAS NOT ANY SORT OF TRIGGERING ISSUE FROM OUR VIEWPOINT.

**THE COURT:**  SO YOUR EXPLANATION IS THAT BECAUSE THINGS WERE HEATING UP CEPHEID WAS FEARFUL THAT THE HAMMER WAS GOING TO COME DOWN ON THE '155?

**MR. PUKNYS:**  WELL, LET ME -- I THINK BECAUSE -- THE TIME LINE IS ACTUALLY USEFUL HERE, BECAUSE THE NOVEMBER 10TH LETTER, THAT'S TRIGGERED BY THE JULY, 2010 LETTER. AND CEPHEID IN THAT LETTER DIDN'T JUST TERMINATE THE LICENSE FOR THE '375 PATENT. WHAT IT SAID WAS THAT:

"THE '375 PATENT HAS EXPIRED, AND, THEREFORE, WE WILL STOP PAYING ROYALTIES AS OF THIS DATE."

AND THAT'S EXHIBIT FOUR IN ROCHE'S MOTION. SO ROCHE'S RESPONSE -- AND, YOU KNOW, ROCHE IS ACCUSING CEPHEID OF GAMING THE DJ ACT HERE.  IT'S ROCHE THAT TIED THE '155 PATENT TO THE '375 PATENT.

SO ROCHE WRITES BACK TO CEPHEID AND SAYS:

"OH, NO.  YOU'RE NOT GOING TO GET OUT OF PAYING

ROYALTIES THAT EASY, BECAUSE WE HAVE THE '155 PATENT HERE IN OUR BACK POCKET. THAT HAS A TERM THAT'S LONGER. SO EVEN IF YOU WIN ON YOUR EXPIRATION ARGUMENT ON THE '375 PATENT, WE'VE GOT THIS '155 PATENT."

AND THIS IS REALLY THE QUESTION.  MR. RABINOWITZ SAYS THIS IS NOT AN ALLEGATION OF INFRINGEMENT. BUT WHAT THE LETTER SAYS, WHAT THE SECOND PARAGRAPH SAYS IS:

"WE HAVE REVIEWED YOUR PRODUCTS, YOUR EXISTING PRODUCTS, AND WE BELIEVE THE '155 PATENT IS NECESSARY."

THAT'S NOT CEPHEID'S LANGUAGE.  THAT'S ROCHE'S LANGUAGE:

"THE '155 PATENT IS NECESSARY FOR CERTAIN OF YOUR PRODUCTS."

THAT IS AN ALLEGATION OF INFRINGEMENT. THAT IS A GENTLEMAN'S WAY OF SAYING:

"YOU INFRINGE OUR PATENTS."

AND THIS COURT'S ZOOSK CASE, JUDGE BRYSON IN THE SANDISK CONCURRENCE TALKS ABOUT WHEN SOMEBODY SAYS YOU NEED A LICENSE, THEY ARE NOT DOING IT TO GIVE YOU AN OPPORTUNITY FOR A WONDERFUL BUSINESS ADVENTURE.  THEY ARE TELLING YOU THEY THINK YOU INFRINGED THE PATENT.

ROCHE HAS NEVER BACKED DOWN FROM THAT STATEMENT.  THE APRIL, 2012 PHONE CALL WAS ROCHE'S LAST OPPORTUNITY TO BACK DOWN FROM THAT STATEMENT. AND ONCE THEY SENT THE TERM SHEET CEPHEID KNEW THEY HAD RECONFIRMED THEIR BELIEF THAT THEY INFRINGED THE PATENT, AND THEY FILED THIS DJ ACTION ON BOTH

PATENTS.

BUT, YOU KNOW, THE SUGGESTION THAT THE DJ ACTION WAS TRIGGERED BY THE DECISION OF THE TRIBUNAL, I THINK, IS COUNTERED BY OUR WILLINGNESS TO VOLUNTEER TO A STAY UNTIL WE SEE WHAT THE TRIBUNAL SAYS.

**THE COURT:** LET ME ASK, THERE'S A JULY 30TH LETTER, WHICH IS EXHIBIT FOUR, AND THEN THE RESPONSE, EXHIBIT 12, THE NOVEMBER 9TH LETTER STARTS BY SAYING:

"IN RESPONSE TO YOUR JULY TERMINATION LETTER, WE SENT A LETTER IN WHICH WE STATED THAT ROCHE IS CONDUCTING ITS OWN ASSESSMENT OF SOME PRODUCTS OF CEPHEID AND/OR ITS AFFILIATES."

IS THAT A LETTER? WHAT EXHIBIT IS THAT? WHERE IS THAT LETTER? WHAT'S THE DATE OF THAT LETTER?

**MR. PUKNYS:** THAT, I THINK, WOULD BE THE AUGUST 31ST LETTER. AND THAT'S EXHIBIT FIVE.

**MR. RABINOWITZ:** AND EXHIBIT SIX TO MY DECLARATION IS A LETTER OF JULY 1ST, 2011.

**THE COURT:** ALL RIGHT. SO GIVEN THE LETTER OF AUGUST 30TH, WHICH IS IN RESPONSE TO THE TERMINATION ATTEMPT ON THE '375, AND THE STATEMENT:

"WELL, FURTHERMORE, BESIDES OUR POSITION ON THAT, WE'RE CONDUCTING OUR OWN ASSESSMENT ON WHETHER OR NOT SOME OF THE PRODUCTS OF YOURS AND YOUR AFFILIATES ARE COVERED BY THE PATENT AND WILL INFORM CEPHEID OF THE OUTCOME OF

SUCH AN ASSESSMENT IN DUE COURSE."

THAT LAYS A PREDICATE TO THE NOVEMBER 9TH LETTER, AND SAYS:

"OKAY.  IN THE COURSE OF OUR REVIEW IT HAS COME TO OUR ATTENTION THERE'S THIS '155 PROBLEM."

**MR. RABINOWITZ:**  YOUR HONOR --

**THE COURT:**  SO THAT CERTAINLY LOOKS LIKE WHATEVER WAS TRIGGERED BY:

"WE'RE GOING TO TERMINATE, NOT PAY ANYTHING MORE ON '375."

YOUR COME BACK IS:

"ALL RIGHT.  WELL, WE'RE GOING TO START LOOKING AT OTHER STUFF AND DO OUR OWN ASSESSMENT."

AND THEN, SOMETIME THEREAFTER ANNOUNCING THAT:

"WE'VE DONE THAT ASSESSMENT, AND WE BELIEVE THE '155 IS NECESSARY FOR CERTAIN OF YOUR PRODUCTS."

SO IN CONTEXT, WHATEVER THE MOTIVE WAS, WHATEVER STARTED THE THING, WHY ISN'T THAT A SUFFICIENTLY CLEAR ASSERTION?  I WON'T EVEN USE THE WORD "THREAT," BUT ASSERTION OF AN INFRINGEMENT TO GIVE ARTICLE III JURISDICTION?

**MR. RABINOWITZ:**  YOUR HONOR, I NEED TO POINT OUT THAT THE PATENT REFERRED TO IN THE FIRST PARAGRAPH OF THIS NOVEMBER 9, 2010 LETTER IS THE '375 PATENT.

**THE COURT:**  YES.

**MR. RABINOWITZ:**  ROCHE WAS DOING ITS OWN ANALYSIS OF

CEPHEID'S PRODUCTS TO EXAMINE WHETHER OR NOT THEY FELL WITHIN THE CLAIMS OF THE '375 PATENT.

IN THE COURSE OF LOOKING AT THE LICENSE ROCHE NOTICED THAT CEPHEID DIDN'T HAVE A LICENSE UNDER THE '155 PATENT, AND OFFERED THEM AN OPPORTUNITY TO ACQUIRE ONE.

AND IN THE COURSE OF THAT OFFER THEY MADE THE VERY TENTATIVE STATEMENT THAT THEY BELIEVED.  IT'S NOT A FIRM ASSERTION OF FACT.  IT'S A PROVISIONAL STATEMENT OF THEIR CURRENT BELIEF.

**THE COURT:**  BUT WHY DOESN'T THAT IMPLY THAT THERE WAS SOME ANALYSIS PUT INTO IT?

"IN THE COURSE OF OUR REVIEW, YOU KNOW, WE'VE COME TO THE CONCLUSION THAT WE BELIEVE IT IS NECESSARY FOR CERTAIN OF YOUR PRODUCTS."

NOW, TO BE SURE, IT IS NOT AS DETAILED A REVIEW AND ANALYSIS, AN INFRINGEMENT ANALYSIS THAT APPEARS IN MANY OF THE OTHER CASES.

**MR. RABINOWITZ:**  WELL, I THINK THAT'S VERY MUCH THE POINT, YOUR HONOR.  IF YOU LOOK AT THE SANDISK CASE WHICH COUNSEL RELIES ON, THERE THERE WAS AN EXHAUSTIVE ANALYSIS, AN IDENTIFICATION OF PARTICULAR CLAIMS INFRINGED, AN IDENTIFICATION OF PARTICULAR PRODUCTS THAT INFRINGED THEM, CLAIM CHARTS WHICH SET FORTH THE BASIS FOR THE FIRM CONCLUSION THAT THE DESIGNATED PRODUCTS INFRINGED THE PARTICULAR CLAIMS THAT THEY WERE SAID TO INFRINGE.

I THINK THERE WAS A TECHNICAL PRESENTATION BY THE SCIENTIFIC PERSONNEL THAT LASTED MANY HOURS. I MEAN, THAT WAS A FIRM, DEFINITE, RIPE CONTROVERSY CAPABLE OF RESOLUTION.

THAT IS VERY, VERY FAR FROM THE TENTATIVE, NONSPECIFIC LANGUAGE IN THE NOVEMBER 9TH, 2010 LETTER, WHICH IS IN THE CONTEXT OF AN INVITATION TO TAKE A LICENSE, RATHER THAN A THREAT OF ENFORCEMENT.

AND IF YOU LOOK AT CASES LIKE THE WOOSTER BRUSH CASE AND THE MONSANTO CASE, WHICH WE'VE CITED, COURTS HAVE LOOKED AT THIS UNDER THE TOTALITY OF THE CIRCUMSTANCES ANALYSIS AND CONCLUDED THAT THE LACK OF SPECIFICITY, THE LACK OF A DEFINITE ACCUSATION OF INFRINGEMENT, THE LACK OF IDENTIFYING CLAIMS AND OF IDENTIFYING PRODUCTS AND OF PROVIDING NO INFRINGEMENT ANALYSIS ARE ALL FACTORS WHICH INDICATE THAT IT DOESN'T FALL ON THE WRONG SIDE OF THE LINE SO AS TO ESTABLISH AN ARTICLE III CONTROVERSY.

AND SO THAT IT'S SUFFICIENTLY SUBSTANTIAL AND IMMEDIATE TO REQUIRE JUDICIAL RESOLUTION NOW.

**MR. PUKNYS:** IF I --

**THE COURT:** ALL RIGHT.  SO LET ME ASK YOU:  THERE'S SEVERAL FACTORS, IF YOU RUN THROUGH THE CORE OF THE CASES THAT YOU CAN SORT OF SYNTHESIZE.

**MR. RABINOWITZ:** YES.

**THE COURT:** ONE IS:  DOES THE PATENT -- DOES THE LETTER -- DOES THE CORRESPONDENCE IDENTIFY SPECIFIC LINE OF

PRODUCTS?

**MR. PUKNYS:**  NOT A REQUIREMENT, YOUR HONOR.

**THE COURT:**  HOLD ON.  I DIDN'T SAY IT'S A REQUIREMENT.  I AM SAYING THERE'S VARIOUS FACTORS. THAT THE FACTORS GOES AGAINST YOU BECAUSE IT'S NOT IDENTIFIED HERE.

TWO:  IS THERE A THOROUGH OR THOUGHTFUL ANALYSIS?  NO. NONE HERE.

THREE:  WAS IT MULTIPLE LETTERS, A SERIES OF CORRESPONDENCE OF THREATS OR ACCUSATIONS?  NO. SINGLE LETTER. UNTIL THEN IT WAS SOLICITED FROM THE PHONE CALL FOR THE LICENSING SCHEDULE.

FOUR:  IS THERE A HISTORY OF LITIGATION THAT SUGGESTS THAT THIS WAS ONE OF SEVERAL -- OF A PATTERN, A PAST PATTERN THAT'S GOING TO PREDICT FUTURE?  NONE IS ALLEGED HERE THAT I'M AWARE OF.

FIVE:  IS THERE AN OBVIOUS INCENTIVE BECAUSE IT'S A NONPRACTICING ENTITY THAT HAS NO OTHER BUSINESS OTHER THAN TO ASSERT ITS LICENSE AND THREATS OF LITIGATION?  NO.

WHAT'S THE LENGTH OF THE DELAY?  YEAR-AND-A-HALF.

DID ANYTHING OCCUR THAT WAS AFFIRMATIVE ON THE SIDE OF THE PATENT HOLDER THAT SUGGESTS THAT THEY WERE GOING TO PURSUE THIS?  NO, BECAUSE THE LAST THING THAT IMPLICATED THIS IS IN APRIL, WHICH WAS A CALL FROM THE -- FROM CEPHEID.

SO, YOU KNOW, YOU'VE GOT SIX OR SEVEN FACTORS ON THE ONE HAND, WEIGHED AGAINST THE LANGUAGE OF -- WHICH YOU HAVE POINTED

OUT, THAT SAYS:

"WE BELIEVE THIS IS NECESSARY FOR CERTAIN OF YOUR PRODUCTS."

THAT'S WHY THIS CASE SORT OF FALLS, YOU COULD ARGUE, YOU KNOW -- WE COULD BE HERE ALL DAY ARGUING WHICH CASE APPLIES.

BUT RIGHT NOW IT LOOKS TO ME THAT THE BULK OF THE FACTORS SUGGEST THAT THERE'S NOT SOMETHING CONCRETE ENOUGH HERE THAT CERTAINLY FITS WELL WITHIN THE EXISTING CASE LAW. I THINK IT WOULD BE A STRETCH AT THIS POINT.

GIVEN ALL THOSE FACTORS, GIVEN SEVEN FACTORS VERSUS ONE.

**MR. PUKNYS:**  WELL, LET ME ADDRESS THE FACTORS IN TURN, BECAUSE I THINK SOME OF THEM ARE ACTUALLY INVOLVED IN THIS CASE.  AND OTHERS THE CASE LAW SAYS IS IRRELEVANT.

FIRST, SANDISK HAD CLAIM CHARTS EXCHANGED BACK AND FORTH, YES.  THERE WAS A DEFINITE, MORE SPECIFIC ALLEGATION OF INFRINGEMENT IN THE SANDISK CASE.

BUT WHAT SANDISK SET OUT FOR THE TEST IS YOU NEED TWO THINGS. YOU NEED AN AFFIRMATIVE ACT BY THE PATENTEE RELATED TO ENFORCEMENT OF HIS PATENT RIGHTS.

AND NOT JUST THE NOVEMBER 9TH LETTER, BUT YOU HAVE ROCHE ENFORCING ITS PATENT RIGHTS IN A SERIES OF LETTERS, IN A SERIES OF CORRESPONDENCE LEADING UP TO THE NOVEMBER 9TH LETTER, AND THEN CONTINUING THROUGH THE NOVEMBER 9TH LETTER TO WHEN IT ACTUALLY SUED CEPHEID IN THE ARBITRATION, WHEN IT ACTUALLY INITIATED THE ARBITRATION AGAINST CEPHEID OVER THE '375 PATENT.

SECOND, THERE IS NO --

**THE COURT:**  ON THE '375, NOT THE '155.

**MR. PUKNYS:**  BUT IF YOU WANT TO TALK ABOUT HISTORY OF ADVERSITY BETWEEN THE PARTIES, YOU HAVE THESE INCREASINGLY ADVERSE LETTERS LEADING UP TO THE POINT WHERE ROCHE ACTUALLY PULLED THE TRIGGER.  AND SO BY THE TIME WE FILED THE DJ ACTION THERE IS NO DISPUTE THAT ROCHE AND CEPHEID ARE LITIGANTS.

**THE COURT:**  WELL, THERE WAS NO DISPUTE DURING THIS 18-MONTH PERIOD BETWEEN THE NOVEMBER 9TH LETTER AND THE APRIL 20TH PHONE CALL.

THAT'S 18 MONTHS OF HOT AND HEAVY STUFF GOING ON.

**MR. PUKNYS:**  WELL --

**THE COURT:**  AND IF YOU WOULD ASSUME THAT THEY WERE IN A LITIGATION MODE, YOU WOULD ASSUME THAT THEY WOULD HAVE SAID:

"HEY, REMEMBER THAT NOVEMBER 9TH LETTER?  WE'RE

PRETTY SERIOUS ABOUT THAT, BY THE WAY."

**MR. PUKNYS:**  RIGHT.  WELL, WE KNOW THAT THERE WAS NO EXCUSE FOR ROCHE TO GET US IN THE ARBITRATION ON THE '375 PATENT. AND SO WHAT WE ARE WORRIED ABOUT, YOU KNOW, WE HAVE THE '375 LITIGATION, IS THIS SERIAL LITIGATION?  WHEN IS THE OTHER SHOE GOING TO DROP FROM ROCHE?  WE'RE TIRED OF WAITING.  AND SO WE PICKED UP THE PHONE IN APRIL AND SAID:

"DO YOU STILL THINK WE NEED A LICENSE FOR" --

**THE COURT:**  NO, I UNDERSTAND THAT.

**MR. PUKNYS:**  SO --

**THE COURT:** YOUR POINT IS THERE'S A THREAT OF SERIAL LITIGATION. THINGS ARE HOT AND HEAVY. AND I'M SUGGESTING THAT IT WELL COULD CUT THE OTHER WAY. BECAUSE IF THINGS ARE HOT AND HEAVY, YOU WOULD EXPECT THEM TO PUT THE PRESSURE ON AND PUT THE PEDAL TO THE METAL AND SAY:

"OKAY. YOU WANT TO PLAY THAT KIND OF GAME? HERE'S SOMETHING ELSE UP OUR SLEEVE," AND THEY DIDN'T --

**MR. PUKNYS:** WELL, THAT'S TRUE IN EVERY DJ CASE. YOU COULD HAVE A THEORETICAL -- THAT ARGUMENT COULD BE BROUGHT UP AGAINST ANY DJ PLAINTIFF IF THERE'S ANY DELAY.

**THE COURT:** WELL, YOU BROUGHT IT UP. I'M SAYING THERE'S AN EQUALLY COGENT INFERENCE THAT GOES THE OTHER WAY. GO ON TO YOUR NEXT POINT.

**MR. PUKNYS:** OKAY. SO THE NEXT POINT IS THE SPECIFICITY OF ANALYSIS. ONE, THERE'S NO REQUIREMENT THAT A CLAIM BE IDENTIFIED.

**THE COURT:** BUT IT'S RELEVANT.

**MR. PUKNYS:** IT'S A FACTOR, PERHAPS, TO BE CONSIDERED.

**THE COURT:** AND THAT'S ALL I SAID. I NEVER SAID ANY ONE OF THESE IS DISPOSITIVE. AND THERE IS NO COHERENT, UNIFIED THEORY THAT EMERGES FROM THE CASE LAW. THEY ALL LOOK AT DIFFERENT FACTORS. I CHALLENGE YOU TO COME UP WITH IN ONE SENTENCE THE PRECISE HOLDING OF ALL OF THESE TO SYNTHESIZE ALL THESE CASES AND SAY:

"HERE'S THE DEFINITIVE TEST."

**MR. PUKNYS:**  WELL, AFFIRMATIVE ACT BY THE PATENT OWNER SHOWING IT'S READY TO ENFORCE ITS PATENTS.

**THE COURT:**  AND YOU GOT A LETTER, EXHIBIT 12.  THAT'S THE BEST EVIDENCE YOU'VE GOT.

**MR. PUKNYS:**  AND WE HAVE GOT PREPARATION FOR OR PREPARATION OR CONTINUED ACTS THAT CAUSED THE ALLEGATION IN THE FIRST PLACE.  AND CEPHEID HAS NOT CHANGED. IT'S STILL, ACCORDING TO ROCHE'S BELIEF OF INFRINGEMENT, CEPHEID IS STILL SELLING THE PRODUCTS THAT CREATE LIABILITY FOR THE '155 PATENT.

SO BOTH FACTORS ARE SATISFIED FOR THE JURISDICTIONAL ASPECT.

NOW, ON THE SERIES OF LETTERS I THINK THESE DO SHOW A CONFLICT BETWEEN THE PARTIES. THEY ARE TRYING TO RESOLVE IT OUTSIDE OF LITIGATION.  BUT, EVENTUALLY, ROCHE PULLS THE TRIGGER, FILES AN ARBITRATION ON THE '375 PATENT.  THEY COULDN'T POSSIBLY DO THAT ON THE '155 PATENT, BUT IT HAS TIED THE TWO TOGETHER.

AND SO CEPHEID'S CONCERN, RATHER THAN DEAL WITH THESE PATENTS SERIALLY:

"LET'S GET THEM BOTH DONE AT THE SAME TIME."

THAT ROCHE IS NOT AN NPE. THAT IS TRUE IN THAT THEY SELL PRODUCTS, BUT I DON'T KNOW HOW MUCH MONEY THEY MAKE OFF OF THEIR LICENSING PROGRAM.  BUT IF YOU LOOK AT THESE LETTERS THEY MAKE A LOT OF MONEY OFF THIS LICENSING PROGRAM.

AND SO THERE IS AN INCENTIVE.  AND, IN FACT, THE INCENTIVE WAS SHOWN IN THAT NOVEMBER 9TH LETTER WHEN WE SAID:

"WELL, THE '375 PATENT IS NO LONGER ENFORCEABLE.  IT EXPIRED."

THEY SAID:

"OH, YEAH?  WE HAVE GOT THIS OTHER PATENT.  YOU ARE GOING TO KEEP PAYING US ROYALTIES."

SO THE ROYALTY STREAM IS AN IMPORTANT FACTOR IN ROCHE'S CALCULOUS HERE.

**THE COURT:**  AND HOW DOES THE SIZE OF THAT ROYALTY STREAM COMPARE GIVEN THE TERM SHEET I DON'T HAVE IN FRONT OF ME FOR THE '155 COMPARED TO THE '375 AGREEMENT?

**MR. PUKNYS:**  I THINK THAT THE ROYALTY PAYMENTS, IF I REMEMBER THE OFFER, WAS THE ROYALTY PAYMENTS WOULDN'T CHANGE. THEY WOULD BE EXTENDED.  THEY WOULD BE EXTENDED. BUT ALSO THAT THERE WAS A FLAT FEE; THAT IF YOU WANTED TO INCLUDE THE '155 PATENT IN YOUR PORTFOLIO OF LICENSED PATENTS THERE WAS AN UPFRONT FEE FOR THAT.  AND THEN YOU WOULD CONTINUE TO PAY ROYALTIES ON THAT PATENT UNTIL IT EXPIRED.

AND SO WHAT ADDING THE '155 PATENT INTO THE MIX HAD THE EFFECT OF DOING IS KEEPING CEPHEID ON THE HOOK FOR ROYALTY PAYMENTS FOR A LONGER PERIOD OF TIME.

**THE COURT:**  BEYOND THAT THAT WOULD HAVE BEEN REQUIRED UNDER THE '375?

**MR. PUKNYS:**  UNDER THE '375, YES.

**MR. RABINOWITZ:**  YOUR HONOR, UNLESS PATENT OWNERS ARE OFFERING ROYALTY-FREE PAID-UP LICENSES WITHOUT REQUIRING ANY PAYMENT, THE OFFER OF ANY LICENSE IMPLIES THAT THE LICENSOR WILL OBTAIN SOME REVENUE.

THIS IS -- I MEAN, NOTHING COULD BE FURTHER FROM THE TRUTH THAN TO ANALOGIZE ROCHE MOLECULAR SYSTEMS IN ANY WAY TO A NONPRACTICING ENTITY, AN ENTITY THAT DOESN'T MAKE INVENTIONS AND DOESN'T GET ITS OWN PATENTS AND DOESN'T MAKE PRODUCTS, BUT DEPENDS ON ASSERTING ITS PATENTS AGAINST --

**THE COURT:**  IS THERE SOMETHING IN THE RECORD THAT SHOWS WHAT WAS EXCHANGED IN THESE TELEPHONE CALLS?

**MR. RABINOWITZ:**  NO, YOUR HONOR.  WE'RE NOT AWARE OF ANY WRITTEN RECORD OF THEM.

**THE COURT:**  WELL, IS IT ALLEGED THAT WHAT MR. SMITH SAID TO MR. WETZEL CHALLENGED HIS CONCLUSION IN ANY WAY SAYING, YOU KNOW:

"WE DON'T REALLY THINK WE INFRINGE ON THIS."  BUT, YOU KNOW, WAS THERE ANYTHING TO INDICATE THAT?  OR WHAT WAS THE CONTENT OF THAT CALL?

**MR. PUKNYS:**  MY UNDERSTANDING OF THE CALL IS HE, MR. SMITH, CALLED AND SAID:

"DO YOU STILL THINK WE NEED A LICENSE FOR THE '155 PATENT?"

AND THE ANSWER WAS AN E-MAIL WITH A TERM SHEET. THERE WAS NO -- AS FAR AS I KNOW, THERE WAS NO DEBATE BETWEEN THE

IN-HOUSE PEOPLE AT ROCHE AND CEPHEID OVER WHETHER THEY INFRINGED OR NOT.

ROCHE ASSERTED ITS BELIEF. OBVIOUSLY, WE BELIEVE OTHERWISE, WHICH IS THAT'S THE --

THE COURT:  THERE IS NO EXCHANGE AT THAT POINT SAYING:

"YOU KNOW, THAT LETTER YOU SENT WE TAKE ISSUE WITH YOU, AND -- BUT WE HAVE AN ISSUE WITH YOU.  WE'LL DISPUTE IT IF YOU GIVE US A DISCOUNTED RATE OF X, Y OR SOMETHING. JUST TO PUT THIS TO BED, WE'LL DO THAT."

THAT DIDN'T HAPPEN.

MR. PUKNYS:  NO, THERE WAS JUST AN OUTRIGHT REFUSAL TO LICENSE, AND THEN WE CONTINUED TO SELL OUR PRODUCTS, WHICH SHOWS THAT WE DISAGREE.

MR. RABINOWITZ:  WELL, YOUR HONOR, IT SHOWS THAT IT HAD NO PRACTICAL IMPACT ON CEPHEID'S BEHAVIOR WHATSOEVER.  THE EARLIER LETTER OFFERED A LICENSE UNDER VERY FAVORABLE TERMS. THEN NOTHING HAPPENED IN RESPONSE TO THAT. THAT OFFER EXPIRED. THE LETTER PROVIDES THE EXPIRING DATE.

THE COURT:  THE TERM SHEET WAS NOT RESPONDED TO?  THE APRIL 24, 2012 TERM SHEET.

MR. PUKNYS:  NO, IT WAS RECEIVED AND WE DECIDED THAT IT WAS NOT NECESSARY, SO WE DIDN'T RESPOND TO.

MR. RABINOWITZ:  SO, YOUR HONOR --

THE COURT:  HOLD ON.  SO THERE WASN'T EVEN AN ATTEMPT

TO GET BACK TO MR. WETZEL AND SAY:

"WE TAKE ISSUE WITH YOU.  HERE'S WHY WE DON'T THINK THIS, THE '155 IS, INDEED, QUOTE, 'NECESSARY TO OUR PATENT.'  BUT PUT THIS TO BED, WE'LL PAY YOU TEN CENTS ON THE DOLLAR OF WHAT YOU ASK," OR START A NEGOTIATION. YOU JUST SIMPLY SAID:

"OKAY, THAT'S IT. LET'S SUE."

**MR. PUKNYS:**  RIGHT. THERE WAS NO RESPONSE TO TRY AND ENGAGE THEM IN INFRINGEMENT ANALYSIS.

**THE COURT:**  THERE'S NO WAY TO ENGAGE.  IF MR. WETZEL HAD EVEN BEEN ENGAGED AND CHALLENGED, WE DON'T KNOW HOW MUCH OF A FIGHT HE WOULD HAVE PUT UP.

**MR. PUKNYS:**  WE DON'T.

**THE COURT:**  WELL, I'LL TAKE IT UNDER SUBMISSION. I'LL LOOK AT THESE CASES YOU'VE CITED AND KIND OF IDENTIFIED WHAT YOU THINK THE MAJOR CASES ARE.  AND I'VE LOOKED AT THEM, BUT I'LL TAKE ANOTHER LOOK. BUT --

**MR. PUKNYS:**  IF I MAY MAKE ONE MORE POINT, YOUR HONOR AND IT HAS TO DO WITH SOMETHING THAT MR. RABINOWITZ SAID VERY EARLY ON.  AND IT'S THE SPECIFICITY OF THE ALLEGATION IN THE LETTER.

AND WHAT ONE OF THE THINGS THE FEDERAL CIRCUIT SAYS TO LOOK AT IS IN THE BENETECH CASE, WHICH IS CITED IN THE PRASCO DECISION, I THINK.  WHAT IT SAYS IS CONSIDER WHAT CAUSE OF ACTION THE COMMUNICATIONS SET OUT WHEN YOU'RE LOOKING AT THE

COMMUNICATIONS BETWEEN THE PARTY.

AND WHAT I WOULD SUGGEST TO YOUR HONOR IS LOOK AT FORM 18, WHICH IS THE FEDERAL RULES OF CIVIL PROCEDURE MODEL PATENT INFRINGEMENT COMPLAINT.

AND IF YOU LOOK AT FORM 18, IT IS NO MORE SPECIFIC THAN THAT LETTER. ALL FORM 18 REQUIRES IS IDENTIFICATION OF THE PATENT.

CHECK, WE HAVE THAT.

THE COURT:  SOME PEOPLE THINK THAT THAT'S NO LONGER GOOD LAW UNDER TWOMBLY AND IQBAL, BUT WE'LL LET THE SUPREME COURT DECIDE THAT QUESTION.

MR. RABINOWITZ:  YOUR HONOR, IF I MAY BRIEFLY RESPOND TO THAT, WHEN FORM 18 IS USED IN A COMPLAINT THERE IS AN ACTUAL COMMENCEMENT BY THE PATENT OWNER OF ADVERSE PROCEEDINGS AGAINST THE DEFENDANT.

THAT DOESN'T GOVERN THIS CASE.

I WOULD JUST LIKE TO MAKE ONE FURTHER POINT:  THE CONTROVERSY REQUIRES THAT THERE ARE TWO SIDES ARGUING ABOUT SOMETHING. THE PLAINTIFF HERE CAN'T LEVERAGE ITS DESIRE TO GET INTO A SCRAP WHERE THE FACTORS ARE NOT SATISFIED FOR ARTICLE III JURISDICTION JUST BECAUSE IT WOULD LIKE TO GET SOME KIND OF A, YOU KNOW, COVENANT NOT TO SUE OR FREE LICENSE.  THAT'S NOT AN OBLIGATION OF A PATENT OWNER.

THE COURT:  ALL RIGHT.  I'LL TAKE IT UNDER SUBMISSION. WE DO HAVE A CMC IN JANUARY.  DEPENDS ON WHAT I

KATHERINE WYATT, OFFICIAL REPORTER, RPR, RMR  925-212-5224

DETERMINE ON THIS MATTER. BUT LET'S -- WE WILL SEE YOU

PRESUMABLY ON JANUARY 31ST.

MR. PUKNYS:  THANK YOU, YOUR HONOR.

THE COURT:  THANK YOU.

(THEREUPON, THIS HEARING WAS CONCLUDED.)

STENOGRAPHY CERTIFICATION

"I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT
FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER."
JANUARY  22, 2013
KATHERINE WYATT

KATHERINE WYATT, OFFICIAL REPORTER, RPR, RMR  925-212-5224